IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| VIRGINIA MOODY,<br><br>        Plaintiff,<br><br>   v.<br><br>SALT LAKE COUNTY, CAPTAIN RICHARD CHURCH, JOHN AND JANE DOES 1-5,<br><br>        Defendant. | **REPORT & RECOMMENDATION TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 55)**<br><br>Civil No. 2:16-cv-01243-CW-EJF<br><br>Judge Clark Waddoups<br><br>Magistrate Judge Evelyn J. Furse |

Plaintiff Virginia Moody filed the present Title VII civil rights action in December 2016.  (Compl., ECF No. 2.)  At that time, counsel represented Ms. Moody.  However, in October 2017, the assigned Magistrate Judge permitted Ms. Moody's counsel to withdraw, (Order Granting Mot. to Withdraw as Counsel, ECF No. 16), and Ms. Moody now proceeds pro se.  (Notice of Appearance, ECF No. 25.)  Ms. Moody asserts a claim for retaliation under Title VII against her former employer, Salt Lake County, and Captain Richard Church, her former supervisor, in both his individual and official capacities (collectively "Salt Lake County Defendants").  (Compl. 2, ECF No. 2.)  Ms. Moody claims that while working at the Salt Lake County Sheriff's Office ("Sheriff's Office") she filed a sexual harassment claim against Captain Church and that he retaliated against her by filing an Internal Affairs ("IA") complaint against her relating to conduct involving her husband that had occurred months earlier.  (Id., ¶¶ 17–22, 39–40.)  Ms. Moody also asserts a retaliatory constructive discharge claim, alleging that the

Sherriff's Office "continued the [IA] investigation without disposition to pressure [Ms.] Moody to leave," that the Sheriff's Office refused to provide or provided her with false information concerning the investigation, and that the "Sheriff's Office continued to allow Captain Church to visit the workplace" after his retirement "despite complaints from [Ms.] Moody." (Id., ¶ 45–47.) She claims that "[a]s a result of [Captain] Church's repeated appearances and the IA investigation that continued without disposition, [Ms.] Moody terminated her employment with the Sheriff's Office." (Id., ¶ 34.) Finally, Ms. Moody appears to assert a retaliatory failure to rehire claim, apparently claiming that Salt Lake County failed to rehire her in retaliation for her filing a sexual harassment complaint. (Id., ¶ 36.) Specifically, Ms. Moody alleges that after leaving the Sheriff's Office, she "was designated as unhireable solely on the basis that she previously filed a sexual harassment complaint." (Id., ¶ 48.)

The Salt Lake County Defendants now move the Court for summary judgment on Ms. Moody's retaliation claims. (Def.'s Mot. for Summ. J. ("Mot."), ECF No. 55.) Ms. Moody asked for an extension of time until February 15, 2019 to file an Opposition to the Salt Lake County Defendants' Motion for Summary Judgment. (Mot. to Extend Time for Mot. for Summ J. Response, ECF No. 57.) The Court granted this request, (Order Granting Pl.'s Mot. to Extend Time for Mot. for Summ J. Response, ECF No. 58), but Ms. Moody did not file an Opposition on that date or at any time thereafter.

After considering the Motion for Summary Judgment and the undisputed facts, the undersigned[1] RECOMMENDS that the District Judge grant the Salt Lake County

---

[1] On January 16, 2018, the District Judge referred this case to the undersigned Magistrate Judge under 28 U.S.C. § 636(b)(1)(B). (ECF No. 18.)

Defendants summary judgment on all claims.  First, the law prevents Ms. Moody from asserting a Title VII claim against Captain Church in his personal capacity.  Second, with the exception of Ms. Moody's claim that Captain Church retaliated against her by filing an IA complaint, Ms. Moody failed to exhaust administrative remedies on her claims.  Specifically, Ms. Moody's Utah Anti-Discrimination and Labor Division ("UALD") and Equal Employment Opportunity Commission ("EEOC") Charge of Discrimination does not include any allegations or facts supporting her retaliatory constructive discharge or retaliatory failure to rehire claims.  Third, the undisputed facts defeat Ms. Moody's claim that Captain Church retaliated against her by filing an IA complaint against her.  The undisputed facts show that the IA investigation Ms. Moody claims Captain Church initiated predates Captain Church's alleged sexual harassment—and therefore her protected complaints concerning any alleged sexual harassment.  The undisputed facts also show that Captain Church did not initiate the IA investigation, and the individual who did initiate the investigation—Lieutenant April Morse—had no knowledge of Ms. Moody's sexual harassment complaint until after she completed the IA investigation.  Accordingly, Ms. Moody cannot show the existence of a materially adverse action or any causal connection between her protected activity—filing a sexual harassment complaint against Captain Church—and the initiation of the IA investigation against her.  Accordingly, the undersigned RECOMMENDS that the District Judge GRANT the Salt Lake County Defendants' Motion for Summary Judgment.

## LEGAL STANDARD

The Court grants summary judgment when the evidence shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(a).  "[A] party's failure to file a response to a summary judgment motion is not, by itself, a sufficient basis on which to enter judgment against the party."  Reed v. Bennett, 312 F.3d 1190, 1195 (10th Cir. 2002).  "If the nonmoving party fails to respond, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its initial burden of demonstrating that no material issues of fact remain for trial and the moving party is entitled to judgment as a matter of law."  Id. at 1194–95.

The party moving for "summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record], which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). Thus, a court can grant summary judgment only "when the moving party has met its burden of production" under Rule 56.  Reed, 312 F.3d at 1194.  "If the evidence produced in support of the summary judgment motion does not meet this burden, 'summary judgment must be denied even if no opposing evidentiary matter is presented.' "  Id. (emphasis in original) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 160 (1970)).

By failing to respond to a motion for summary judgment, "the nonmoving party waives the right to respond or to controvert the facts asserted in the summary judgment motion," and "[t]he court should accept as true all material facts asserted and properly supported in the summary judgment motion."  Reed, 312 F.3d at 1195; see also DUCivR 56-1(c).  "But only if those facts entitle the moving party to judgment as a matter of law should the court grant summary judgment."  Reed, 312 F.3d at 1195.

4

Courts generally construe pro se pleadings broadly.  Jenkins v. Currier, 514 F.3d 1030, 1032 (10th Cir. 2008).  However, courts cannot act as advocates for pro se litigants who must comply with the fundamental requirements of the Federal Rules of Civil Procedure.  See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (indicating that the district court may not "assume the role of advocate for the pro se litigant"); Kay v. Bemis, 500 F.3d 1214, 1218 (10th Cir. 2007) (stating that pro se parties must " 'follow the same rules of procedure that govern other litigants' ") (quoting Garrett v. Selby, Connor, Maddux & Janer, 425 F.3d 836, 840 (10th Cir. 2005)).

In evaluating a motion for summary judgment, the Court reviews "the facts in the light most favorable to the nonmovant and draw[s] all reasonable inferences in the nonmovant's favor."  Jones v. Norton, 809 F.3d 564, 573 (10th Cir. 2015).  The Court therefore focuses on whether reasonable jurors can " 'properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed.' "  Anderson v. Liberty Lobby, 477 U.S. 242, 251 (1986) (quoting Schuylkill & Dauphin Imp. Co. v. Munson, 81 U.S. 442, 448 (1871)).

## **FACTUAL BACKGROUND**

The following facts come from the Salt Lake County Defendants' Motion.  (Mot. 3–17, ECF No. 55.)  Ms. Moody did not respond to the Salt Lake County Defendants' Motion and consequently, does not dispute these facts or set forth any additional facts.

### A.  Ms. Moody's Employment with Salt Lake County Sheriff's Office

Salt Lake County Sheriff's Office employed Ms. Moody[2] as a Corrections

Specialist from August 9, 2010 until she resigned on April 2, 2015.  (Mot., Statement of

Undisputed Material Facts ("Facts") ¶ 1, ECF No. 55; Ex. A to Mot., Personnel File,

SLCo Moody 000091, SLCo Moody 000001, ECF No. 55-2; Ex. Q to Mot., Decl. of

Carita Lucey ("Lucey Decl.") ¶ 6, ECF No. 55-18.)  Ms. Moody successfully completed

her six-month probationary period in February 2011 and became a merit employee at

that time.  (Mot., Facts ¶ 4, ECF No. 55; Ex. A to Mot., Personnel File, SLCo Moody

000072, ECF No. 55-2.)  While employed by Salt Lake County, Ms. Moody generally

met or surpassed expectations in her performance evaluations.  (Mot., Facts ¶¶ 3, 5,

ECF No. 55; Ex. A to Mot., Personnel File, SLCo Moody 000002–000004, SLCo Moody

000039–000041, SLCo Moody 000053–000055, SLCo Moody 000060, SLCo Moody

000073, SLCo Moody 000077–000080, ECF No. 55-2.)  However, in December 2012

Ms. Moody received a verbal warning for incorrectly entering information into an

offender database.  (Mot., Facts ¶ 6, ECF No. 55; Ex. A to Mot., Personnel File, SLCo

Moody 000058–000059, ECF No. 55-2.)  In addition, in December 2013 Ms. Moody

received a verbal warning and in January 2014 a written warning for failing to complete

mandatory training.  (Mot., Facts ¶ 6, ECF No. 55; Ex. A. to Mot., Personnel File, SLCo

Moody 000029–000030, SLCo Moody 000047–000049, ECF No. 55-2; Ex. P. to Mot.,

---

[2] Many of the exhibits to Salt Lake County Defendants' Motion refer to Ms. Moody as Virginia Hendrickson, which appears to be her maiden name.  Ms. Moody identified herself as Virginia Hendrickson Moody in one of the exhibits to the Motion.  (Ex. B to Mot., Virginia Hendrickson-Moody Interview Tr., SLCo Moody 000127, ECF No. 55-3.) Thus references in the exhibits to Virginia Hendrickson reflect references to Ms. Moody.

Pl.'s Interrog. Responses, Response Packet No. 9 (11/22/13 Letter from Gleason to

Moody), ECF No. 55-17; Ex. S to Mot., Decl. of Richard Church ("Church Decl.") ¶ 10,

ECF No. 55-20.)

### B. IA Investigation

On or about November 23, 2013, the Internal Affairs (IA) Unit of the Salt Lake

County Sheriff's Office opened an investigation against Officer Jeff Moody after

receiving a complaint from his ex-wife, Miken Baca, concerning the welfare of their

children when in his custody.  (Mot., Facts ¶ 9, ECF No. 55; Ex. R to Mot., Decl. of April

Morse ("Morse Decl.") ¶ 6, ECF No. 55-19.)  Lieutenant April Morse of the IA Unit

investigated that complaint.  (Mot., Facts ¶ 10, ECF No. 55; Ex. R. to Mot., Morse Decl.

¶¶ 3–6, ECF No. 55-19.)  After opening the IA case file concerning Officer Moody,

Lieutenant Morse received an additional complaint from Ms. Baca about an incident that

took place on November 27, 2013.  (Mot., Facts ¶ 11, ECF No. 55; Ex. R. to Mot.,

Morse Decl., ¶ 7, ECF No. 55-19.)  On November 27, 2013, Officers from the West

Valley City and Unified Police Departments responded to Officer Moody's home on a

report of domestic violence, which culminated in a physical altercation between Officer

Moody and Ms. Baca's boyfriend.  (Mot., Facts ¶ 11, ECF No. 55; Ex. R. to Mot., Morse

Decl., ¶ 7, ECF No. 55-19; Ex. B to Mot., Police Reports, SLCo Moody 000095–000120,

ECF No. 55-3.)  After receiving this complaint, Lieutenant Morse broadened the scope

of her investigation to include both incidents.  (Ex. R to Mot., Morse Decl. ¶ 7, ECF No.

55-19.)

On December 2, 2013, consistent with IA procedures, Lieutenant Morse

interviewed Ms. Baca.  (Mot., Facts ¶ 12, ECF No. 55; Ex. R to Mot., ECF No. 55,

Morse Decl. ¶ 8, ECF No. 55-19.)  During that interview Ms. Baca provided Lieutenant

Morse with a copy of the 911 call that captured the November 27, 2013 events.  (Id.)

After listening to the audio, Lieutenant Morse realized that Officer Moody's then-spouse,

Virginia Moody, the Plaintiff, participated in the incident.  (Id.)  The incident occurred

outside the Moodys' apartment, and the recording revealed Ms. Moody yelling and

swearing.  (Mot., Facts ¶ 13, ECF No. 55; Ex. B to Mot., Police Reports, SLCo Moody

000098, SLCo Moody 000100–000101, SLCo Moody 000111, ECF No. 55-3; Ex. C. to

Mot., IA Unit Investigation Report, Case No. INV-13-0146, SLCo Moody 000188, SLCo

Moody 0000191, SLCo Moody 000193, SLCo Moody 000196–000197, SLCo Moody

000211, ECF No. 55-4.)  Lieutenant Morse believed Ms. Moody's behavior potentially

violated Sheriff's Office policy 2-2-03.07(3), which requires members to act

professionally and be respectful, courteous, and civil with each other and the public, and

Sheriff's Office policy 2-2-03.07(4), which prohibits the use of profane and indecent

language to intimidate or incite a person to violence.  (Mot., Facts ¶ 14, ECF No. 55; Ex.

R to Mot., Morse Decl. ¶ 9, ECF No. 55-19; Ex. 1 to Ex. R to Mot., Salt Lake County

Sheriff's Office Policy Manual, 2-2-03.07(3) & (4), ECF No. 55-19.)

Before broadening the scope of her investigation to include Ms. Moody, Salt Lake

County Sheriff's Office policy required Lieutenant Morse to notify Ms. Moody's

commander or higher ranking officer.  (Mot., Facts ¶ 15, ECF No. 55; Ex. R to Mot.,

Morse Decl. ¶ 10, ECF No. 55-19; Ex. I, Salt Lake County Sheriff's Office Policy

Manual, 2-5-02.02(5), SLCo Moody 000244, ECF No. 55-10.)  Consistent with this

policy—and prior to Captain Church's alleged interactions with Ms. Moody in late

December 2013—Lieutenant Morse contacted Ms. Moody's Division Commander,

Captain Church, in early December to inform him of Ms. Moody's conduct and her intent to investigate the behavior she felt warranted review.  (Mot., Facts ¶ 16, ECF No. 55; Ex. R to Mot., Morse Decl. ¶ 11, ECF No. 55-19; Ex. S to Mot., Church Decl. ¶ 17, ECF No. 55-20; Ex. C. to Mot., IA Unit Investigation Report, Case No. INV-13-0146, SLCo Moody 000197, ECF No. 55-4.)  Captain Church gave his approval to Lieutenant Morse.  (Id.)

On December 10, 2013, Lieutenant Morse contacted Ms. Moody to apprise her of the investigation and to ask her to participate in an interview.  (Mot., Facts ¶ 17, ECF No. 55; Ex. M to Mot., Pl.'s Responses to First Set of Admis. (Morse & Moody e-mail chain from 12/10/13 to 12/13/13), ECF No. 55-14.)  Ms. Moody agreed to meet with Lieutenant Morse.  (Id.)  On December 16, 2013, Lieutenant Morse traveled to the jail to meet with Ms. Moody.  (Mot., Facts ¶ 18, ECF No. 55; Ex. R to Mot., Morse Decl. ¶ 12, ECF No. 55-19.)  At the outset of the interview, Lieutenant Morse explained the interview process to Ms. Moody, reviewed forms with her, and informed her that in addition to the conduct of her husband, Officer Moody, Lieutenant Morse wished to speak to Ms. Moody about her own conduct during the November 27, 2013 incident.  (Id.)  Ms. Moody indicated that she wanted to reschedule the interview so she could have a legal representative present.  (Mot., Facts ¶ 19, ECF No. 55; Ex. R to Mot., Morse Decl. ¶ 12, ECF No. 55-19.)  Lieutenant Morse agreed and terminated the interview.  (Id.)

On January 3, 2014, Lieutenant Morse met with Ms. Moody for the rescheduled interview.  (Mot., Facts ¶ 20, ECF No. 55; Ex. R to Mot., Morse Decl. ¶ 13, ECF No. 55-19.)  Lieutenant Morse again explained the interview process to Ms. Moody, reviewed

forms with her, and again indicated that she intended to evaluate Ms. Moody's

November 27, 2013 conduct for potential personal conduct violations in addition to that

of her husband.  (Id.)  Ms. Moody verbally acknowledged that she understood the

interview process and signed the forms related to the interview process, including the

Recorded Interview and Garrity Warning Form and Member Notification Form.  (Mot.,

Facts ¶ 21, ECF No. 55; Ex. R to Mot., Morse Decl. ¶ 14, ECF No. 55-19; Ex. B to Mot.,

Interview Forms, SLCo Moody 000121–000123, ECF No. 55-3.)

On January 15, 2014, Lieutenant Morse completed her IA Report concerning

Officer Moody and Ms. Moody.  (Mot., Facts ¶ 22, ECF No. 55; Ex. R to Mot., Morse

Decl. ¶ 15, ECF No. 55-19; Ex. C. to Mot., IA Unit Investigation Report, Case No. INV-

13-0146, SLCo Moody 000186–000211, ECF No. 55-4.)  Lieutenant Morse concluded

that Officer Moody's conduct on November 27, 2013 violated numerous Sheriff's Office

policies.  (Mot., Facts ¶ 23, ECF No. 55; Ex. R to Mot., Morse Decl. ¶ 16, ECF No. 55-

19; Ex. C. to Mot., IA Unit Investigation Report, Case No. INV-13-0146, SLCo Moody

000210–000211, ECF No. 55-4.)  Lieutenant Morse also concluded that Ms. Moody's

conduct on November 27, 2013 violated Sheriff's Office policies 2-2-03.07(3) and 2-2-

03.07(4).  (Mot., Facts ¶ 24, ECF No. 55; Ex. R to Mot., Morse Decl. ¶ 17, ECF No. 55-

19; Ex. C. to Mot., IA Unit Investigation Report, Case No. INV-13-0146, SLCo Moody

000211, ECF No. 55-4.)  Upon completing her Report, Lieutenant Morse notified Officer

Moody's Division Commander and Ms. Moody's Division Commander, Captain Church.

(Mot., Facts ¶ 25, ECF No. 55; Ex. R to Mot., Morse Decl. ¶ 15, ECF No. 55-19.)

Lieutenant Morse did not make any disciplinary recommendations because the

IA Unit does not handle the decision as to whether to discipline an employee as a result

of an IA investigation.  (Mot., Facts ¶ 26, ECF No. 55; Ex. R to Mot., Morse Decl. ¶ 19, ECF No. 55-19; Ex. I, Salt Lake County Sheriff's Office Policy Manual, 2-5-02.07(2)–(6), SLCo Moody 000246, ECF No. 55-10.)  Lieutenant Karen Werner reviewed Lieutenant Morse's report and recommended that Salt Lake County impose no discipline against Ms. Moody.  (Mot., Facts ¶¶ 27–28, ECF No. 55; Ex. R to Mot., Morse Decl. ¶ 20, ECF No. 55-19; Ex. O to Mot., Def's Responses to Pl.'s First Set of Discovery Requests (Ans. to Interrog. No. 1), ECF No. 55-16.)  The Salt Lake County Sheriff's Office followed Lieutenant Werner's recommendation, and Ms. Moody received no discipline for her conduct during the November 27, 2013 incident.  (Mot., Facts ¶ 28, ECF No. 55; Ex. O to Mot., Def's Responses to Pl.'s First Set of Discovery Requests (Ans. to Interrog. No. 1), ECF No. 55-16.)  On the other hand, Officer Moody's Division Commander recommended termination for his role in the November 27, 2013 incident. (Mot., Facts ¶ 29, ECF No. 55; Ex. O to Mot., Def's Responses to Pl.'s First Set of Discovery Requests (Ans. to Interrog. No. 1), ECF No. 55-16; Ex. D to Mot., 2/24/14 Winder Letter to Moody, SLCo Moody 000262–000265, ECF No. 55-5.)  Officer Moody received a letter from then-Sheriff Jim Winder stating that Salt Lake County intended to terminate his employment.  (Mot., Facts ¶ 30, ECF No. 55; Ex. D to Mot., 2/24/14 Winder Letter to Moody, SLCo Moody 000262–000265, ECF No. 55-5.)  Officer Moody acknowledged receipt of the letter and verbally resigned.  (Mot., Facts ¶ 30, ECF No. 55; Ex. D to Mot., 2/25/14 Harris E-mail, SLCo Moody 000261, ECF No. 55-5.)

## C.  Failure to Complete Mandatory Training

From early September 2013 to October 30, 2013, the Sheriff's Office required all civilian employees to complete an online mandatory block of training by October 30,

2013.  (Mot., Facts ¶ 32, ECF No. 55; Ex. A to Mot., Personnel File, SLCo Moody 000031–000032, ECF No. 55-2; Ex. S to Mot., Church Decl. ¶ 8, ECF No. 55-20.)  Ms. Moody did not complete the mandatory training before she went on maternity leave in late October 2013.  (Id.)  On November 8, 2013, Captain Church received an e-mail informing him of employees, including Ms. Moody, who did not complete the training by the October 30, 2013 deadline.  (Mot., Facts ¶ 33, ECF No. 55; Ex. A to Mot., Personnel File, SLCo Moody 000048–000049, ECF No. 55-2; Ex. S to Mot., Church Decl. ¶ 9, ECF No. 55-20.)  On November 13, 2013, Captain Church indicated in his response to the e-mail that Ms. Moody was present at work during the training period and would receive a verbal warning when she returned from maternity leave.  (Mot., Facts ¶ 34, ECF No. 55; Ex. A to Mot., Personnel File, SLCo Moody 000047–000048, ECF No. 55-2; Ex. S to Mot., Church Decl. ¶ 10, ECF No. 55-20.)  He also forwarded his e-mail to Ms. Moody's civilian chain of command, Marcie Atkinson and Mindy Gleason, with a carbon copy to Lieutenant Werner, asking them to prepare verbal warnings for all staff members, including Ms. Moody, who failed to complete this required training.  (Mot., Facts ¶ 35, ECF No. 55; Ex. A to Mot., Personnel File, SLCo Moody 000047–000048, ECF No. 55-2; Ex. S to Mot., Church Decl. ¶ 10, ECF No. 55-20.)

On December 17, 2013, after Ms. Moody returned from maternity leave, Ms. Gleason met with her for a year-end performance review and gave her the verbal warning for failing to complete the required training.  (Mot., Facts ¶ 36, ECF No. 55; Ex. A to Mot., Personnel File, SLCo Moody 000039–000041, ECF No. 55-2; Ex. P. to Mot., Pl.'s Interrog. Responses, Response Packet No. 9 (11/22/13 Letter from Gleason to Moody), ECF No. 55-17.)  Ms. Moody received an extension of time until December 23,

2013 to complete the training.  (Mot., Facts ¶ 37, ECF No. 55; Ex. A. to Mot., Personnel File, SLCo Moody 000029–000030, ECF No. 55-2; Ex. T to Mot., EEO Compl., SLCo Moody 000177, ECF No. 55-21.)

On December 31, 2013, Captain Church approached Ms. Moody during a shift change after she failed to complete the required training by December 23, 2013.  (Mot., Facts ¶ 37, ECF No. 55; Ex. S to Mot., Church Decl. ¶ 12, ECF No. 55-20.)  During the conversation, Ms. Moody attempted to explain that she failed to complete the training because of technical difficulties.  (Mot., Facts ¶ 38, ECF No. 55; Ex. S to Mot., Church Decl. ¶ 12, ECF No. 55-20; Ex. T to Mot., EEO Compl., SLCo Moody 000184–000185, ECF No. 55-21.)  Captain Church instructed Ms. Moody to submit a memorandum to her supervisor explaining why she did not complete the training; on January 1, 2014 she submitted the memorandum.  (Mot., Facts ¶ 38, ECF No. 55; Ex. S to Mot., Church Decl. ¶ 13, ECF No. 55-20; Ex. A to Mot., Personnel File, SLCo Moody 000031–000032, ECF No. 55-2; Ex. T to Mot., EEO Compl., SLCo Moody 000184–000185, ECF No. 55-21.)  Ms. Moody also claims that during this encounter, Captain Church "invad[ed] [her] personal space" and said "What do I need to do, give you a spanking?" (Mot., Facts ¶ 38, ECF No. 55; Ex. T to Mot., EEO Compl., SLCo Moody 000184–000185, ECF No. 55-21.)  Captain Church does not recall making that remark.  (Mot., Facts ¶ 38, ECF No. 55; Ex. S to Mot., Church Decl. ¶ 14, ECF No. 55-20.)

On January 8, 2014, Lieutenant Werner sent Ms. Moody an e-mail informing her that her supervisor would issue a written warning because she failed to complete the mandatory training in December.  (Mot., Facts ¶ 40, ECF No. 55; Ex. T to Mot., EEO Compl., SLCo Moody 000183, ECF No. 55-21.)  Ms. Gleason issued Ms. Moody a

written warning the same day.  (Mot., Facts ¶ 40, ECF No. 55; Ex. A. to Mot., Personnel

File, SLCo Moody 000029–000030, ECF No. 55-2.)  Subsequently, Ms. Moody filed a

grievance appeal, which Salt Lake County denied, upholding the written warning.  (Mot.,

Facts ¶ 7, ECF No. 55; Ex. P. to Mot., Pl.'s Interrog. Responses, Response Packet No.

9 (2/10/14 Letter from Gleason to Moody), ECF No. 55-17.)

### D. Sexual Harassment Complaint and Investigation

Also in early January 2014, Ms. Moody contacted Linda Hill, an EEO Analyst in

Salt Lake County's Human Resources Department to make a report of sexual

harassment.[3]  (Mot., Facts ¶ 39, ECF No. 55; see Ex. P. to Mot., Pl.'s Interrog.

Responses, Response Packet No. 8, ECF No. 55-17.)  On January 14, 2014, Ms.

Moody completed an Equal Opportunity Complaint form, indicating she wanted to

discuss the complaint before filing a charge of discrimination.  (Mot., Facts ¶ 41, ECF

No. 55; Ex. T to Mot., EEO Compl., SLCo Moody 000176, ECF No. 55-21.)  In a

summary also dated January 14, 2014, Ms. Moody described her December 31, 2013

interaction with Captain Church, claiming that he "invad[ed] her personal space" and

said "What do I need to do, give you a spanking?," as well as a related encounter

January 6, 2014 in which she claims he "invaded [her] personal space" again while

discussing her Gold's Gym membership.  (Mot., Facts ¶ 41, ECF No. 55; Ex. T to Mot.,

EEO Compl., SLCo Moody 000184–000185, ECF No. 55-21.)

---

[3] The parties dispute whether Ms. Moody first contacted Ms. Hill on January 3 or 10, 2014, but as the Salt Lake County Defendants point out, this dispute is not material to the outcome of this case. (Mot. 11 n.2, ECF No. 55.)

On January 21, 2014, Ms. Moody followed up with Ms. Hill and Nilsa Carter, another EEO Analyst, stating she wished to "file charges of Discrimination/Sexual Harassment."  (Mot., Facts ¶ 39, ECF No. 55; Ex. P. to Mot., Pl.'s Interrog. Responses, Response Packet No. 8, ECF No. 55-17.)  Ms. Hill acknowledged receipt of the complaint the same day.  (Mot., Facts ¶ 42, ECF No. 55; Ex. P. to Mot., Pl.'s Interrog. Responses, Response Packet No. 8, ECF No. 55-17.)

Sergeant David Soper of Internal Affairs and Sergeant Stan Moleni of Human Resources investigated Ms. Moody's complaint.  (Mot., Facts ¶ 43, ECF No. 55; Ex. E to Mot., IA Unit Investigation Report, Case No. INV-01-0014, SLCo Moody 000215–000219, ECF No. 55-6.)  Lieutenant Morse did not investigate Ms. Moody's sexual harassment allegations.  (Ex. R to Mot., Morse Decl. ¶ 18, ECF No. 55-19; see Ex. E to Mot., IA Unit Investigation Report, Case No. INV-01-0014, SLCo Moody 000215–000219, ECF No. 55-6.)  Further, Lieutenant Morse had no knowledge of Ms. Moody's sexual harassment complaint or allegations during her investigation concerning the November 27, 2013 incident and did not learn of Ms. Moody's complaint until "well after" January 15, 2014, when she completed her report concerning Officer Moody and Ms. Moody.  (Ex. R to Mot., Morse Decl. ¶ 18, ECF No. 55-19.)

Sergeants Soper and Moleni interviewed Ms. Moody on February 11, 2014 and Captain Church on February 14, 2014.  (Mot., Facts ¶ 43, ECF No. 55; Ex. E to Mot., IA Unit Investigation Report, Case No. INV-01-0014, SLCo Moody 000215–000219, ECF No. 55-6.)  On June 30, 2014, Sergeants Soper and Moleni issued a written report on the investigation in which they concluded:

> There is no evidence to substantiate that [Captain Church] said things that were sexually inappropriate to [Ms. Moody].   No witnesses or other evidence could be found to substantiate [Ms. Moody's] claims.   Although the incident was in plain view of other staff no other staff member appeared to be directly involved in the conversation.   The accused denies using the word 'spanking' in any conversation with [Ms. Moody].

(Mot., Facts ¶ 44, ECF No. 55; Ex. E to Mot., IA Unit Investigation Report, Case No. INV-01-0014, SLCo Moody 000215–000219, ECF No. 55-6.)   Salt Lake County informed Ms. Moody and Captain Church in writing of the results of the investigation. (Mot., Facts ¶ 45, ECF No. 55; Ex. F to Mot., Letters to Moody & Church, ECF No. 55-7.)

In between the time of the interviews and issuance of the Report on Ms. Moody's sexual harassment claim, Captain Church retired effective March 1, 2014.  (Mot., Facts ¶ 43, ECF No. 55; Ex. S to Mot., Church Decl. ¶ 3, ECF No. 55-20.)

On July 17, 2014, Ms. Moody contacted Sergeant Moleni to request that he reopen the investigation since she had a witness, Heather Hayes, who overheard Captain Church use the word "spanking" during the December 31, 2013 incident.  (Mot., Facts ¶ 46, ECF No. 55; Ex. G, July 2014 E-Mails, SLCo Moody 000222–000223, ECF No. 55-8.)  Sergeants Soper and Moleni reopened their investigation and interviewed Ms. Moody's witness.  (Mot., Facts ¶ 47, ECF No. 55; Ex. H to Mot., IA Unit Investigation Report Addendum #1, Case No. INV-01-0014, SLCo Moody 000227–000230, ECF No. 55-9.)  Ms. Hayes indicated during the interview that she heard Captain Church make the statement, "Do you need a spanking," felt he made the statement "in more of a joking manner" but found it unprofessional.  (Mot., Facts ¶ 47, ECF No. 55; Ex. H to Mot., IA Unit Investigation Report Addendum #1, Case No. INV-

01-0014, SLCo Moody 000228, ECF No. 55-9.)  Ms. Hayes also could not distinguish whether Captain Church made the statement in reference to Ms. Moody having not completed her training or with a sexual connotation.  (Id.)

On August 26, 2014, Sergeants Soper and Moleni issued an addendum to their report.  (Mot., Facts ¶ 47, ECF No. 55; Ex. H to Mot., IA Unit Investigation Report Addendum #1, Case No. INV-01-0014, SLCo Moody 000227–000230, ECF No. 55-9.) The addendum expressed concerns about Ms. Hayes's delay in providing information on this incident but ultimately concluded that even if Captain Church made the "spanking" comment,

> [a]t most, the statement would be considered a violation of the Sheriff's Office Code of Conduct policies.  However, as Captain Church has resigned his employment, no administrative action can be taken against him for violation of office policies.

(Mot., Facts ¶ 48, ECF No. 55; Ex. H to Mot., IA Unit Investigation Report Addendum #1, Case No. INV-01-0014, SLCo Moody 000229–000230, ECF No. 55-9.)

### E. Charge of Discrimination & Resignation

On February 10, 2015, Ms. Moody filed a Charge of Discrimination with the UALD and EEOC.  (Mot. ¶ 49, ECF No. 55; Ex. N to Mot., Charge of Discrimination, ECF No. 55-15.)  The Charge of Discrimination alleges retaliation based on sex and states that the discrimination continued from December 17, 2013 to July 17, 2014.  (Ex. N to Mot., Charge of Discrimination, ECF No. 55-15.)  In the narrative of the Charge of Discrimination, Ms. Moody states:

> On or around December 17, 2013, I did not finish some training that was required of me to complete due to be [sic] out on maternity leave after having given birth.  I was reprimanded for having my baby, as well as

17

verbally sexually harassed by my Captain because of not finishing my training.

On January 3, 2014 I complained of the sexual harassment to the EEO of HR.  I was retaliated against by having IA placed against me.  My claim was denied on July 17, 2014.

(Id.)

On March 20, 2015, Ms. Moody submitted a letter of resignation to her new Division Commander, Captain Ron Adams, and Lieutenant Rebecca Greene.  (Mot., Facts ¶ 50, ECF No. 55; Ex. A to Mot., Personnel File, SLCo Moody 000001, ECF No. 55-2.)  Ms. Moody made her resignation effective April 2, 2015.  (Id.)  In the letter, Ms. Moody also thanks her co-workers and three particular supervisors "for the many memories and laughs throughout the years" and writes "[y]ou've been so helpful and I really appreciate you all" and "[t]hank you for providing me with the chance to work here."  (Mot., Facts ¶ 52, ECF No. 55; Ex. A to Mot., Personnel File, SLCo Moody 000001, ECF No. 55-2.)  Ms. Moody did not mention any of the events relating to Captain Church, Lieutenant Morse's IA investigation, or any negative experiences or problems she had while working at the Sheriff's Office.  (Mot., Facts ¶ 53, ECF No. 55; see Ex. A to Mot., Personnel File, SLCo Moody 000001, ECF No. 55-2.)

On March 31, 2015, Ms. Moody wrote to Captain Adams expressing stress and anxiety about the IA investigation stemming from the November 27, 2013 incident outside her residence.  (Mot., Facts ¶ 54, ECF No. 55; Ex. P. to Mot., Pl.'s Interrog. Responses, Response Packet No. 6 (3/31/15 Moody & Adams E-mail Chain), ECF No. 55-17.)  In her e-mail, Ms. Moody indicates that she should not have to "walk[] into work every day knowing I am still under some type of investigation" and states

> I am assuming that along with me leaving the Sheriff's Office that this will
> finally 'close" the county's IA Investigation on me and allow all information
> in regarding [sic] this incident be released to me per all Utah's laws.

(Ex. P. to Mot., Pl.'s Interrog. Responses, Response Packet No. 6 (3/31/15 Moody &

Adams E-mail Chain), ECF No. 55-17.)  Captain Adams responded to Ms. Moody's e-

mail the same day indicating that

> [t]o my knowledge all cases involving you are closed and have been for
> quite a while.  I checked the system to verify this and found it to be true.  I
> called Sgt. David Soper this morning and he verified this as well.  As I recall
> Lieutenant Werner reviewed the case you reference and found no cause for
> corrective action and closed the case several months ago.

(Mot., Facts ¶ 54, ECF No. 55; Ex. P. to Mot., Pl.'s Interrog. Responses, Response

Packet No. 6 (3/31/15 Moody & Adams E-mail Chain), ECF No. 55-17.)  Ms. Moody did

not rescind her resignation based on this information.  (Mot., Facts ¶ 55, ECF No. 55;

see Ex. A to Mot., Personnel File, SLCo Moody 000001, ECF No. 55-2.)  When she

resigned, Ms. Moody qualified as an employee in good standing.  (Mot., Facts ¶ 8, ECF

No. 55; Ex. Q to Mot., Lucey Decl. ¶ 7, ECF No. 55-18.)

## F.  Rehire Request

In September 2015, Ms. Moody contacted the Sherriff's Office seeking rehire.

(Mot., Facts ¶ 55; Ex. Q to Mot., Lucey Decl. ¶ 9 & Ex. 2 (9/24/15 Moody Letter &

9/21/15 Twitchell E-mails), ECF No. 55-18.)  As a former merit employee in good

standing at the time of her resignation, Ms. Moody met the requirements for rehire on a

non-competitive basis under Salt Lake County Human Resources Policy 2-700, in effect

at the time.  (Mot., Facts ¶ 56, ECF No. 55; Ex. Q to Mot., Lucey Decl. ¶¶ 7, 7 n.1 & Ex.

1, Policy No. 2-700 II.B.1, SLCo Moody 000280, ECF No. 55-18.)  Salt Lake County

Human Resource Policy 2-700 is discretionary and does not require Salt Lake County to

rehire a former employee.  (Mot., Facts ¶ 57, ECF No. 55; Ex. Q to Mot., Lucey Decl. ¶

8 & Ex. 1, Human Resources Policy No. 2-700 II.B.1, SLCo Moody 000280, ECF No.

55-18.)  Instead, the Policy provides that

> [f]ormer county employees who have successfully completed a
> probationary period are <u>eligible</u> for rehire, without competition, into any
> vacant position for which they meet the minimum qualifications.

(Ex. Q to Mot., Lucey Decl., Ex. 1, Human Resources Policy No. 2-700 II.B.1, SLCo

Moody 000280, ECF No. 55-18 (emphasis added).)

On September 21, 2015, Maritza Twitchell, a Salt Lake County human resources

coordinator, reached out to Ms. Moody's former chain of command, indicating that Ms.

Moody requested rehire and solicited their input.  (Mot., Facts ¶ 55, ECF No. 55; Ex. Q

to Mot., Lucey Decl. ¶ 9 & Ex. 2 (9/21/15–9/23/15 Twitchell E-mail Chain), ECF No. 55-

18.)  None of the individuals recommended extending Ms. Moody a non-competitive

offer.  (Id.)  On September 24, 2015, Ms. Moody formally submitted a letter to then-

Sheriff James Winder asking to return to her prior position.  (Mot., Facts ¶ 58, ECF No.

55; Ex. Q to Mot., Lucey Decl. ¶ 10 & Ex. 2 (9/24/15 Moody Letter), ECF No. 55-18.)  In

that letter, Ms. Moody stated that she "thoroughly enjoyed" her time at Salt Lake County

and "the people that [she] worked with."  (Mot., Facts ¶ 59, ECF No. 55; Ex. Q to Mot.,

Lucey Decl., Ex. 2 (9/24/15 Moody Letter), ECF No. 55-18.)  Sherriff Winder denied Ms.

Moody's rehire request.  (Mot., Facts ¶ 58, ECF No. 55; Ex. Q to Mot., Lucey Decl. ¶ 10

& Ex. 2 (9/24/15 Moody Letter), ECF No. 55-18.)  On September 29, 2015, Ms.

Twitchell informed Ms. Moody that the Sheriff's Office would not extend a non-

competitive rehire offer to her, but she could "apply for any public recruitment with the

County."  (Mot., Facts ¶ 60, ECF No. 55; Ex. Q to Mot., Lucey Decl. ¶ 11 & Ex. 2

(9/29/15 Twitchell E-mail), ECF No. 55-18.)  Salt Lake County does not have an

"unhireable" or "ineligible for rehire" designation for former employees and did not

designate Ms. Moody as "unhireable" or "ineligible for rehire."   (Mot., Facts ¶ 61, ECF

No. 55; Ex. Q to Mot., Lucey Decl. ¶ 12, ECF No. 55-18.)

### G. Present Lawsuit

On September 8, 2016, the EEOC dismissed Ms. Moody's Charge of

Discrimination and issued a Notice of Suit Rights.  (Mot., Facts ¶ 62, ECF No. 55; Ex. N

to Mot., Dismissal and Notice of Rights, ECF No. 55-15.)  On December 9, 2016, Ms.

Moody filed the present action.  (Mot., Facts ¶ 63, ECF No. 55; Compl., ECF No. 2.)

### DISCUSSION

Ms. Moody asserts a cause of action for retaliation under Title VII against Salt

Lake County and Captain Church, in both his individual and official capacities.  (Compl.

¶¶ 7–8, 38–48, ECF No. 2.)  Her retaliation claim includes three distinct components

that she alleges flow from her "filing a sexual harassment complaint with the Sheriff's

Office and the Labor Commission."  (Id., ¶ 39.)  First, she claims that "[w]hen Captain

Church learned of the [sexual harassment] complaint, [he] retaliated by filing an IA

Complaint."  (Id., ¶ 40.)  She describes the IA complaint as relating to "conduct that had

occurred months prior" involving her husband.  (Id., ¶¶ 21–22.)  Further, she claims that

> [a]t the IA investigation meeting for her husband, April Morse informed [Ms.]
> Moody that Captain Church had filed a complaint against her and began
> asking Moody questions about the IA complaint.

(Id., ¶ 23.)  Second, Ms. Moody claims Salt Lake County constructively discharged her

in retaliation for filing a sexual harassment complaint.  See Fischer v. Forestwood Co.,

525 F.3d 972, 980 (10th Cir. 2008) ("A constructive discharge occurs only 'when an

employer, through unlawful acts, makes working conditions so intolerable that a reasonable person in the employee's position would feel forced to resign.' " (quoting Exum v. U.S. Olympic Comm., 389 F.3d 1130, 1135 (10th Cir. 2004))).  Specifically, Ms. Moody asserts that "[a]fter Captain Church filed the IA complaint, the Sheriff's Office continued the investigation without disposition to pressure [Ms.] Moody to leave," that the "Sheriff's Office refused to provide [Ms.] Moody with information or provided [Ms.] Moody with false information regarding her IA investigation," and that "[a]fter Captain Church retired from the Sheriff's [O]ffice, [the] Sheriff's Office continued to allow Captain Church to visit the workplace despite complaints from [Ms.] Moody."  (Compl. ¶¶ 45–47, ECF No. 2.)  She further asserts that "[a]s a result of [Captain] Church's repeated appearances and the IA investigation that continued without disposition, [Ms.] Moody terminated her employment with the Sheriff's Office."  (Id., ¶ 34.)  Third, Ms. Moody appears to claim that Salt Lake County failed to rehire her in retaliation for filing a sexual harassment complaint.  (See id., ¶ 36.)  Specifically, Ms. Moody asserts that after she "left the Sherriff's Office, [Ms.] Moody was designated as unhireable solely on the basis that she previously filed a sexual harassment complaint."  (Id., ¶ 48.)

## A.  Title VII Does Not Permit an Individual Capacity Claim Against Captain Church

Ms. Moody asserts her Title VII retaliation claim against her supervisor Captain Church "in his official and personal capacity."  (Compl. ¶ 8, ECF No. 2.)  The Salt Lake County Defendants argue that dismissal of the claims brought against Captain Church in his personal capacity is appropriate because "Title VII does not permit a supervisor to be sued in his individual capacity."  (Mot. 18–19, ECF No. 55.)

" 'The relief granted under Title VII is against the <u>employer</u>, not individual employees whose actions would constitute a violation of the Act.' " <u>Sauers v. Salt Lake Cty.</u>, 1 F.3d 1122, 1125 (10th Cir. 1993) (quoting <u>Busby v. City of Orlando</u>, 931 F.2d 764, 772 (11th Cir. 1991)).  Thus, "[u]nder Title VII, suits against individuals must proceed in their official capacity; individual capacity suits are inappropriate."  <u>Sauers</u>, 1 F.3d at 1125; <u>see</u> <u>also</u> <u>Haynes v. Williams</u>, 88 F.3d 898, 901 (10th Cir. 1996) ("[P]ersonal capacity suits against individual supervisors are inappropriate under Title VII."); <u>Williams v. W.D. Sports, N.M., Inc.</u>, 497 F.3d 1079, 1083 n.1 (10th Cir. 2007) ("Under long-standing [Tenth] [C]ircuit precedent, supervisors and other employees may not be held personally liable under Title VII.").

Further, Title VII claims against supervisors in their official capacities operate as claims against the employer.  <u>See</u> <u>Sauers</u>, 1 F.3d at 1125 (stating that "because the suit against [the individual] could proceed only in his official capacity, it operated as a suit against Salt Lake County itself"); <u>Lewis v. Four B Corp.</u>, 211 F. App'x 663, 665 n.2 (10th Cir. 2005) (unpublished) (indicating that "supervisors may be named in their official capacity and/or as alter egos of the employer, but just as a means to sue the employer.").

Because Title VII does not permit individual capacity claims, courts will dismiss individual capacity claims.  <u>See</u> <u>e.g.</u>, <u>Carpenter v. Sw. Bell Tel. Co.</u>, 27 F. Supp. 3d 1168, 1170–71 (D. Kan. 2014) (granting summary judgment and dismissing Title VII claim against defendant "in his individual capacity" since "Plaintiffs may bring Title VII suits against individuals only in their official capacities, not in their personal capacities").  Accordingly, the undersigned RECOMMENDS the District Judge DISMISS Ms. Moody's

Title VII retaliation claim brought against Captain Church in his individual capacity. Further, the undersigned notes that the official capacity claim against Captain Church operates as claims against Salt Lake County, which is already a named defendant. See Sauers, 1 F.3d at 1125. Therefore, the undersigned RECOMMENDS the District Judge DISMISS Ms. Moody's Title VII retaliation claim brought against Captain Church in his official capacity as well.

### B. Ms. Moody Failed to Exhaust Administrative Remedies on All Claims Asserted in the Complaint Except for Her Claim that Captain Church Retaliated by Filing an IA Complaint Against Her

As addressed above, Ms. Moody asserts a claim against the Salt Lake County Defendants for retaliation under Title VII based on her filing of a sexual harassment complaint against Captain Church. That claim consists of three discrete components: (1) Captain Church's alleged filing of an IA complaint against Ms. Moody, (2) Salt Lake County's alleged constructive discharge of Ms. Moody "[a]s a result of [Captain] Church's repeated appearances and the IA investigation that continued without disposition," and (3) Salt Lake County's failure to rehire Ms. Moody after allegedly designating her as "unhireable" when she left the Sheriff's Office. (Compl. ¶¶ 34, 36, 40–48, ECF No. 2.) The Salt Lake County Defendants argue that Ms. Moody only exhausted administrative remedies on the first of these claims and that the Court therefore lacks jurisdiction over the other claims. (Mot. 20–22, ECF No. 55.) The undersigned finds that Ms. Moody failed to exhaust administrative remedies on these claims.

While Salt Lake County argues that the Court lacks jurisdiction over Ms. Moody's retaliatory constructive discharge and retaliatory failure to rehire claims, the Tenth

Circuit recently held that exhaustion of administrative remedies in the EEOC context is not a jurisdictional requirement.  See Lincoln v. BNSF Ry. Co., 900 F.3d 1166, 1177 (10th Cir. 2018) ("[W]e overturn our precedent that filing an EEOC charge is a jurisdictional prerequisite to suit.").  However, courts will still grant summary judgment if the undisputed facts show that a plaintiff failed to exhaust administrative remedies, and the defendant did not waive the defense.  Id. at 1185-1186; see Cirocco v. McMahon, 768 F. App'x 854, 858 (10th Cir. 2019) (unpublished) (considering "exhaustion defense under the standards of summary judgment").  Ms. Moody does not contend that Salt Lake County waived its exhaustion defense.

In Martinez v. Potter, the Tenth Circuit abrogated the "continuing violation" doctrine, which allowed courts to exercise jurisdiction over " 'discrimination like or reasonably related to the allegations of the EEOC charge, including new acts occurring during the pendency of the charge before the EEOC.' "  347 F.3d 1208, 1210–11 (10th Cir. 2003) (quoting Ingels v. Thiokol Corp., 42 F.3d 616, 625 (10th Cir. 1994)).  The Tenth Circuit held that, given the abrogation of this doctrine, "unexhausted claims involving discrete employment actions are no longer viable" under Title VII and that a "Title VII plaintiff [must] exhaust administrative remedies for each individual discriminatory or retaliatory act[.]"  Id.  While the Court

> liberally construe[s] charges filed with the EEOC in determining whether administrative remedies have been exhausted as to a particular claim . . . . the charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim.

Jones v. U.P.S., Inc., 502 F.3d 1176, 1186 (10th Cir. 2007).

Ms. Moody filed a single Charge of Discrimination with the UALD and EEOC on February 10, 2015, alleging retaliation based on sex continuing from December 17, 2013 to July 17, 2014.  (Ex. N to Mot., Charge of Discrimination, ECF No. 55-15.)  In the narrative of the Charge of Discrimination, Ms. Moody stated:

> On or around December 17, 2013, I did not finish some training that was required of me to complete due to be [sic] out on maternity leave after having given birth.  I was reprimanded for having my baby, as well as verbally sexually harassed by my Captain because of not finishing my training.
>
> On January 3, 2014 I complained of the sexual harassment to the EEO of HR.  <u>I was retaliated against by having IA placed against me.</u>  My claim was denied on July 17, 2014.

(<u>Id.</u> (emphasis added)).

Ms. Moody plainly exhausted her administrative remedies on the claim that Captain Church retaliated against her by filing an IA complaint.  However, Ms. Moody did not exhaust administrative remedies on her other two claims.  Ms. Moody's Charge of Discrimination does not include her claim for retaliatory constructive discharge, which constitutes a separate and discrete retaliatory act apart from Captain Church's allegedly filing an IA complaint against Ms. Moody.  <u>See</u> <u>Paige v. Donovan</u>, 511 F. App'x 729, 732–33 (10th Cir. 2013) (unpublished) (upholding district court's decision that plaintiff failed to exhaust administrative remedies on discrete constructive discharge claim).  Ms. Moody filed the Charge of Discrimination on February 10, 2015, alleging retaliatory conduct continuing from December 17, 2013 through July 17, 2014; however, Ms. Moody did not resign from her position until months later on April 2, 2015.  "[A]ny adverse employment actions occurring after [plaintiff] submitted his [EEOC] charge . . . would not fall within the scope of his charge."  <u>Jones</u>, 502 F.3d at 1186.  Moreover, the

narrative description, written months before Ms. Moody even resigned, includes no reference to Captain Church appearing at the Sherriff's Office after his retirement or the IA investigation continuing without disposition—the alleged conduct that forms her constructive discharge claim.  "[T]he [EEOC] charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim."  Id.

The Charge of Discrimination also fails to include Ms. Moody's claim for alleged retaliatory failure to rehire, which likewise constitutes a separate and discrete alleged retaliatory act.  See Morris v. Cabela's Wholesale, Inc., 486 F. App'x 701, 704 (10th Cir. 2012) (unpublished) (holding that defendant's "alleged retaliatory failure to rehire [plaintiff] was a discrete act 'for which administrative remedies must be exhausted' " (quoting Martinez, 347 F.3d at 1210)).  Again, Ms. Moody's February 10, 2015 Charge of Discrimination only includes conduct occurring through July 17, 2014; Ms. Moody did not request rehire until September 2015.  Where the alleged conduct occurs after the plaintiff files the EEOC charge, it falls outside the scope of the charge.  Jones, 502 F.3d at 1186.  Moreover, the narrative of the Charge of Discrimination—written before Ms. Moody ever requested rehire—unsurprisingly does not reference this allegedly retaliatory failure to rehire since she filed the Charge before she made the request.  An EEOC charge must include facts underlying each claim for the plaintiff to exhaust administrative remedies as to each claim.  Id.

Because Ms. Moody did not exhaust administrative remedies on her retaliatory constructive discharge and retaliatory failure to rehire claims, and Ms. Moody does not argue waiver, the undersigned RECOMMENDS the District Judge GRANT the Salt Lake

County Defendants summary judgment on Ms. Moody's retaliatory constructive discharge and retaliatory failure to rehire claims.

### C. The Undisputed Facts Show a Lack of a Materially Adverse Action and Causal Connection with Respect to Ms. Moody's Retaliation Claim Concerning the IA Investigation

Ms. Moody did exhaust her administrative remedies for her claim that "[w]hen Captain Church learned of the [sexual harassment] complaint [she filed], [he] retaliated by filing an IA Complaint."  (Compl., ¶ 40, ECF No. 2.)  Ms. Moody claims Captain Church filed an IA complaint against her based on conduct that had occurred in November 2013 involving her husband, Officer Moody, which Lieutenant Morse investigated.  (See id., ¶¶ 21–23, ECF No. 2.)  Specifically, Ms. Moody alleges that

> [a]t the IA investigation meeting for her husband, April Morse informed [Ms.] Moody that Captain Church had filed a complaint against her and began asking Moody questions about the IA complaint.

(Id., ¶ 23.)

Title VII prohibits retaliation "against an employee for opposing practices made unlawful by the statute."  Hansen v. SkyWest Airlines, 844 F.3d 914, 924 (10th Cir. 2016).  To prove a Title VII retaliation claim, a plaintiff may "present direct evidence, or he can rely on circumstantial evidence and utilize the McDonnell Douglas burden-shifting test."  Ward v. Jewell, 772 F.3d 1199, 1202 (10th Cir. 2014) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)).  Under the McDonnell Douglas framework, a plaintiff must first establish a prima facie case by showing " '(1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action.' "

Somoza v. Univ. of Denver, 513 F.3d 1206, 1212 (10th Cir. 2008) (quoting Argo v. Blue

Cross & Blue Shield of Kan., Inc., 452 F.3d 1193, 1202 (10th Cir. 2006)).

The Salt Lake County Defendants move for summary judgment on Ms. Moody's

retaliation claim concerning the IA investigation.  (Mot. 19–20, 23–28, ECF No. 55.)

They assert that Ms. Moody lacks direct evidence of retaliation and argue that Ms.

Moody fails to establish even a prima facie retaliation case under the McDonnell

Douglas framework.   (Mot. 18–20, 23–28, ECF No. 55.)  The Salt Lake County

Defendants concede that Ms. Moody meets the first element of a prima facie case—that

she engaged protected opposition to discrimination by lodging a sexual harassment

complaint against Captain Church in January 2014.  (Id. at 19 ("Ms. Moody's January

2014[] sexual harassment complaint against [Captain] Church constitutes protected

activity; thus satisfying the first element of a retaliation claim.").  However, they argue

that Ms. Moody fails to establish the existence of a materially adverse action or a causal

connection between the protected activity and materially adverse action.  (Id. at 19–20,

23–28.)  Specifically, the Salt Lake County Defendants argue that the undisputed facts

establish that Lieutenant Morse's IA investigation predates the alleged sexual

harassment by Captain Church and that Captain Church did not initiate the IA

investigation against Ms. Moody, defeating her claim.  (Id. at 23–28.)

The undersigned finds that Ms. Moody failed to present any evidence of direct

retaliation and, as addressed below, that she has also failed to establish a prima facie

case of retaliation.  The undisputed facts show that the IA investigation is not a

materially adverse action, actionable under Title VII, because it predates the alleged

sexual harassment by Captain Church on December 31, 2013.  Further, no causal

connection exists between Ms. Moody's January 2014 sexual harassment complaint and the initiation of the IA investigation given the timing of the events and the fact Lieutenant Morse, the individual who initiated the IA investigation into Ms. Moody's conduct, had no knowledge of Ms. Moody's sexual harassment complaint when conducting her investigation.  Accordingly, the undersigned recommends the Court grant summary judgment on this claim.

### 1.  Materially Adverse Action

Title VII's "antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 67 (2006).  An employment action qualifies as materially adverse if it " 'might have dissuaded a reasonable worker from making or supporting a charge of discrimination.' " Id. at 68 (quoting Rochon v. Gonzales, 438 F.3d 1211, 1219 (D.C. Cir. 2006)).  Thus the material adverse action must necessarily occur after the protected activity.  See Pastran v. K-Mart Corp., 210 F.3d 1201, 1205 (10th Cir. 2000) (indicating a plaintiff must show that her employer subjected her to an adverse action "subsequent to the protected activity" to establish a prima facie retaliation claim under Title VII); Gunnell v. Utah Valley State Coll., 152 F.3d 1253, 1262 (10th Cir. 1998) (requiring adverse action to occur "subsequent to or contemporaneous with the protected activity" to establish a prima facie retaliation claim); Archuleta v. Colo. Dep't of Institutions, 936 F.2d 483, 486 (10th Cir. 1991) (stating that an "adverse action by the employer" must occur "subsequent to the protected activity").

The record does not support Ms. Moody's claim that she suffered a materially adverse action, actionable under Title VII's antiretaliation provision.  As the Salt Lake

County Defendants point out, the initiation of an IA investigation against an employee could, under certain circumstances, constitute an adverse action if the investigation occurred after the protected activity.  (Mot. at 20, ECF No. 55.)  However, the undisputed facts show that Lieutenant Morse initiated the IA investigation against Ms. Moody concerning the November 27, 2013 incident at the Moodys' residence before Ms. Moody alleges Captain Church sexually harassed her on December 31, 2013. Therefore, the IA investigation began before Ms. Moody filed her sexual harassment complaint in January 2014.  Lieutenant Morse, who conducted the IA investigation into the November 27, 2013 incident at the Moodys' residence, indicated in her Declaration that she realized in early December 2013 that Ms. Moody played a role in the November incident and that Ms. Moody's conduct may have violated Sheriff's Office policies.  (Ex. R. to Mot., Morse Decl. ¶¶ 7–9, ECF No. 55-19.)  Lieutenant Morse subsequently obtained consent from Captain Church to expand the scope of her investigation to include Ms. Moody, and then reached out to Ms. Moody on December 10, 2013 to set up an interview.  (Id., ¶¶ 10–11; Ex. M to Mot., Pl.'s Responses to First Set of Admis. (Morse & Moody e-mail chain from 12/10/13 to 12/13/13), ECF No. 55-14.)  On December 16, 2013, Lieutenant Morse met with Ms. Moody and indicated at the beginning of the interview that she wished to speak to Ms. Moody about her own conduct during the November 27, 2013 incident.  (Ex. R. to Mot., Morse Decl. ¶ 12, ECF No. 55-19.)  Ms. Moody decided she wanted to reschedule the interview so she could have a legal representative present.  (Id.)  Lieutenant Morse terminated the interview at that time and ultimately conducted the full interview with Ms. Moody on January 3, 2014. (Id., ¶¶ 12–14.)

Thus, the IA investigation into Ms. Moody's conduct—which she alleges constitutes a materially adverse action—began no later than early December 2013 when Lieutenant Morse expanded her investigation to include Ms. Moody's conduct during the November 27, 2013 incident.  Ms. Moody alleges Captain Church sexually harassed her on December 31, 2013, and she filed a complaint concerning the harassment in January 2014.  Therefore, the allegedly materially adverse action—the initiation of an IA investigation stemming from the events on November 27, 2013—occurred <u>before</u> the protected activity at issue—the lodging of a sexual harassment complaint against Captain Church.  As such, the initiation of the IA investigation into Ms. Moody's conduct stemming from the November 27, 2013 incident does not constitute a materially adverse employment action under Title VII.

### 2.  Causal Connection

"To establish a causal connection, [a plaintiff] must present 'evidence of circumstances that justify an inference of retaliatory motive.' " <u>Ward</u>, 772 F.3d at 1203 (quoting <u>Williams v. W.D. Sports, N.M., Inc.</u>, 497 F.3d 1079, 1091 (10th Cir. 2007)).  "If the protected conduct is closely followed by the adverse action, courts have often inferred a causal connection."  <u>Id.</u>  Where a plaintiff cannot establish causation through temporal proximity, he "must use 'additional evidence . . . to establish causation.' " <u>Ward</u>, 772 F.3d at 1203 (quoting <u>Anderson v. Coors Brewing Co.</u>, 181 F.3d 1171, 1179 (10th Cir. 1999)).  Using this additional evidence, a plaintiff must show that the materially adverse action would not have occurred "but for" his protected activity.  <u>Univ. of Tex. Sw. Med. Ctr. v. Nassar</u>, 570 U.S. 338, 360 (2013).  "The evidence of but-for causation 'must be based on more than mere speculation, conjecture, or surmise.' "

Ward, 772 F.3d at 1203 (quoting Bones v. Honeywell Int'l, Inc., 366 F.3d 869, 875 (10th Cir. 2004)).

Ms. Moody's claim also fails because of the lack of a causal connection between the protected activity—Ms. Moody's filing of a sexual harassment complaint against Captain Church—and materially adverse action—the initiation of an IA investigation against Ms. Moody.  The fact that the allegedly material adverse action occurred before the protected activity negates any causal connection between them.  See Harp v. Dep't of Human Servs., 932 F. Supp. 2d 1217, 1230 (D. Colo. 2013) (finding that "[b]ecause the evidence is undisputed that [defendant employer] investigated and terminated [the plaintiff] before she complained of race discrimination, she cannot establish the requisite causal connection between any protected activity and her termination"); Fisher v. Univ. of Kan. Facilities Operations, No. 10-4102-DJW, 2011 WL 5868349, at *12 (D. Kan. Nov. 22, 2011) (unpublished) ("The requisite causal connection for retaliation claims may be established only if the protected [activity] preceded the claimed retaliation."); Green v. Paragon Films, Inc., 814 F. Supp. 2d 1174, 1186 (N.D. Okla. 2011) ("Because plaintiff's protected conduct occurred after the decision to terminate his employment was final, it is not possible for plaintiff to show that his protected activity had any causal connection to an adverse employment action.").

Moreover, despite Ms. Moody's allegations to the contrary, the undisputed facts show that Lieutenant Morse, not Captain Church, initiated the IA investigation against Ms. Moody after listening to 911 tapes relating to the November 27, 2013 incident at the Moodys' apartment.  (See Ex. R. to Mot., Morse Decl. ¶¶ 7–14, ECF No. 55-19.) Further, Lieutenant Morse did not know about the protected activity, i.e., Ms. Moody's

sexual harassment complaint until well after she completed her unrelated IA investigation into Ms. Moody and her husband's conduct from November 2013.  (Id., ¶ 18.)  To establish a causal connection, a "plaintiff must show that the individual who took adverse action against him knew of the employee's protected activity."  Williams v. Rice, 983 F.2d 177, 181 (10th Cir. 1993); Hinds v. Sprint/United Mgmt. Co., 523 F.3d 1187, 1203 (10th Cir. 2008) (stating that to show a causal connection, a plaintiff must "come forward with evidence from which a reasonable factfinder could conclude that those who decided to [take an adverse action against] him had knowledge of his protected activity").  Because Lieutenant Morse did not know about Ms. Moody's sexual harassment complaint at the time she initiated the IA investigation into Ms. Moody's conduct, Ms. Moody cannot show a causal connection between her sexual harassment complaint and the IA investigation.  Thus, for this additional reason, Ms. Moody cannot show a causal connection between her sexual harassment complaint and the IA investigation relating to the November 2013 incident.

Because the undisputed facts show the lack of a materially adverse action and causal connection in this case, Ms. Moody fails to state a prima facie case of retaliation stemming from the initiation of the IA investigation against her.  Thus the undersigned RECOMMENDS the District Judge grant the Salt Lake County Defendants summary judgment on the only claim for which Ms. Moody exhausted administrative remedies.

### D.  Retaliation Through the Ongoing IA Investigation

The Salt Lake County Defendants include a section at the end of their Motion arguing that the undisputed facts do not support Ms. Moody's claim that she suffered retaliation by Salt Lake County continuing the IA investigation without disposition.  (Mot.

28–30, ECF No. 55.)  The undersigned does not address this argument.  As explained above, these allegations form part of Ms. Moody's retaliatory constructive discharge claim—a claim for which Ms. Moody did not exhaust administrative remedies.  Indeed, the Charge of Discrimination does not include any facts concerning the duration of the IA investigation or allegations that it continued without disposition, and it does not refer to her resignation from the Sheriff's Office given that she filed the Charge before she resigned.  Therefore, the undersigned's prior recommendations make review of this argument unnecessary.

## **RECOMMENDATION**

For the reasons set forth above, the undersigned Magistrate Judge RECOMMENDS the District Judge GRANT the Salt Lake Defendants' Motion for Summary Judgment.

The Court will send copies of this Report and Recommendation to all parties, who the Court hereby notifies of their right to object to the same.  See 28 U.S.C. § 636(b)(1); Fed R. Civ. P. 72(b).  The parties must file any objection to this Report and Recommendation within fourteen (14) days of service thereof.  Id.  Failure to object may constitute waiver of objections upon subsequent review.

DATED this 8th day of July, 2019.

BY THE COURT:

EVELYN J. FURSE
United States Magistrate Judge